2009 ME 15

## DEPARTMENT OF HEALTH AND HUMAN SERVICES

v.

### Scott B. MAYBEE.

Supreme Judicial Court of Maine.

Argued: June 16, 2008.
Decided: Feb. 10, 2009.

David J. McNamara, Esq., Phillips Lytle L.L.P.; Margaret A. Murphy, Esq. (orally), Buffalo, NY; Michael A. Nelson, Esq., Jensen Baird Gardner & Henry, Portland, ME, for Scott B. Maybee.

G. Steven Rowe, Attorney General, Jennifer A. Willis, Asst. Atty. Gen. (orally), Peter B. Lafond, Asst. Atty. Gen., Office of the Attorney General, Augusta, ME, for the Maine Department of Health and Human Services.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

SILVER, J.

[¶ 1] Scott B. Maybee appeals from an order entered in the Superior Court (Kennebec County, *Marden, J.*) denying his motion for summary judgment and granting a summary judgment in favor of the Department of Health and Human Services. The Department brought a civil enforcement action pursuant to 22 M.R.S. 1555–C(8) (2008) because Maybee failed to obtain a retail tobacco vendor license in violation of 22 M.R.S. 1555–C(1) (2008). Maybee contends that because he conducts his tobacco delivery business from a location within the boundaries of an Indian reservation in New York State, the courts of Maine do not have subject matter jurisdiction, and the Maine vendor license requirement is preempted by federal law. Because subject matter jurisdiction exists and the Maine statute is not preempted, we affirm.

## I. BACKGROUND

[¶ 2] Maybee is an enrolled member [1] of the Seneca Nation of Indians. The

1. The United States Supreme Court has noted that persons who are not members of a tribe

Seneca Nation is a federally recognized Indian nation whose tribal territory is located in western New York State. Maybee, through several sole proprietorships, sells tobacco products at retail over the Internet and by mail order. His businesses operate from a location on the Seneca reservation. Maybee accepts orders for cigarettes and mails the orders directly to consumers, some of whom are in Maine.

[¶ 3] In 2006, the Department filed a complaint alleging sixty-seven violations of 22 M.R.S. 1555–C(1). Both parties filed dispositive motions, and the court granted the Department's motion for summary judgment on the basis that federal law does not preempt the Maine tobacco vendor licensing requirement. The court then held a hearing on penalties and imposed a fine of $33,500, pursuant to 22 M.R.S. 1555–C(1)(A), (8) (2008). This appeal followed.

## II. DISCUSSION

■ [¶ 4] We review a grant of summary judgment de novo, considering the evidence in the light most favorable to the party against whom judgment has been entered, to decide whether the parties' statements of material facts and the referenced record material reveal a genuine issue of material fact. *Dyer v. Dep't of Transp.,* 2008 ME 106, ¶ 14, 951 A.2d 821, 825. We will affirm a grant of summary judgment if the record reflects that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

[¶ 5] The tobacco vendor license statute, 22 M.R.S. 1555–C(1), makes it "unlawful for any person to accept an order for a

delivery sale of tobacco products to a consumer in the State unless that person is licensed under this chapter as a tobacco retailer." A delivery sale is defined as the sale of a tobacco product to a consumer in Maine when the purchaser submits the order by the Internet, telephone, or delivery service, or the products are delivered by the use of a commercial delivery service. 22 M.R.S. 1551(1–B), (1–C) (2008). Licensing requirements for delivery sales apply when the purchase is for personal consumption rather than resale and the purchaser is not a licensed tobacco distributor or retailer. 22 M.R.S. 1551(1–A), (1–B), 1555–C(1) (2008).

[¶ 6] Maybee contends that because the license requirement is triggered by the acceptance of an order, and because his businesses are on the reservation and accept orders from that location, his activity must be deemed to take place within the reservation's boundaries. We disagree. Maybee, as a delivery seller, engages in activity that reaches beyond the reservation when he accepts orders from and sends cigarettes to consumers who are off the reservation.

■ [¶ 7] Maybee's business interactions with consumers off the reservation are important to the analysis of both subject matter jurisdiction and preemption. Subject matter jurisdiction addresses whether the court has the authority to adjudicate the matter. *Int'l Paper Co. v. Town of Jay,* 665 A.2d 998, 1001 (Me.1995). Maybee cites *Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), and *Kennerly v. District Court,* 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507 (1971) (per curiam), in support of his position that

are not "constituents of the governing Tribe." *Washington v. Confederated Tribes of the Colville Indian Reservation,* 447 U.S. 134, 161, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980). May-

bee presumably asserts his status as an enrolled member to support his arguments on subject matter jurisdiction and preemption.

subject matter jurisdiction is lacking. In *Williams* and *Kennerly,* the United States Supreme Court held that the state courts of Arizona and Montana, respectively, lacked subject matter jurisdiction because these states had not accepted jurisdiction over Native Americans on reservations. *Williams,* 358 U.S. at 222–23, 79 S.Ct. 269; *Kennerly,* 400 U.S. at 425–27, 91 S.Ct. 480.

[¶ 8] Maybee's reliance on *Williams* and *Kennerly* is misplaced. Those cases discuss activity that took place entirely within the reservation, and, for that reason, do not provide guidance here. Both involve collection actions by merchants with stores on reservations against Native Americans who purchased goods on credit at those stores. *Williams,* 358 U.S. at 217–18, 79 S.Ct. 269; *Kennerly,* 400 U.S. at 424, 91 S.Ct. 480. As mentioned above, Maybee's customers are not on the reservation. They buy their cigarettes through the Internet or by mail order, and accept delivery in Maine.

[¶ 9] Maybee's preemption argument is based on the same flawed premise; he asserts that because his businesses are physically located on the reservation when they accept orders, his transactions are governed by the law applicable to activities that occur within reservation boundaries. Maybee argues that 22 M.R.S. 1555–C(1) is preempted by federal law that restricts state authority over Native Americans conducting activities within reservations, citing *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980), and *Moe v. Confederated Salish & Kootenai Tribes of the Flathead Reservation,* 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976).[2]

[¶ 10] In *White Mountain Apache Tribe,* the United States Supreme Court held that preemption is one of two "independent but related barriers" to the exercise of state authority over tribal reservations and members. 448 U.S. at 142–43, 100 S.Ct. 2578. Because the Indian Commerce Clause of the United States Constitution grants Congress the power to regulate commerce with Indian tribes, federal law may preempt state law in some areas. *Id.* at 142, 100 S.Ct. 2578 (citing U.S. Const. art. I, 8, cl. 3). However, there is no federal statute, federal regulation, or other federal law that preempts Maine's tobacco vendor licensing requirement.

[¶ 11] The other barrier arises when state regulation infringes on tribal self-government and requires an inquiry or balancing test that the Court applies when the state seeks to regulate conduct that takes place entirely on a reservation. *Id.* at 142, 144–45, 100 S.Ct. 2578. In cases involving the on-reservation conduct of persons who are not Native American, the Court balances the tribe's interest in self-government against the state's interest in regulating on-reservation activity. *Wagnon v. Prairie Band Potawatomi Nation,* 546 U.S. 95, 99, 126 S.Ct. 676, 163 L.Ed.2d 429 (2005) (citing *White Mountain Apache Tribe,* 448 U.S. at 144, 100 S.Ct. 2578).

[¶ 12] The balancing test described in *White Mountain Apache Tribe* and *Wagnon* is inapplicable to the present case because Maybee's interactions with consumers in Maine extend beyond the boundaries of the reservation. Activity of tribal members that takes place within the reservation but has an impact outside the reservation may be regulated by the states. *Nevada v. Hicks,* 533 U.S. 353,

---

**2.** The United States Supreme Court recently held that two other provisions of the Maine law governing tobacco sales, 22 M.R.S. 1555–C(3)(C), 1555–D (2008), are preempted by a federal statute, *Rowe v. N.H. Motor Transp. AssŌn,* 552 U.S. ——, 128 S.Ct. 989, 993, 169 L.Ed.2d 933 (2008), but those provisions are not at issue in the present case.

362–66, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001) (holding that, in the absence of federal legislation to the contrary, the state has the authority to execute a search warrant on a reservation against a tribal member suspected of violating state law outside the reservation).

[¶ 13] The United States Supreme Court's holdings regarding vendor licensing requirements in *Rice v. Rehner*, 463 U.S. 713, 720, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983), and *Moe*, 425 U.S. at 480–81, 96 S.Ct. 1634 support Maine's enforcement of its tobacco vendor licensing requirements against Maybee. In *Rice*, the Court held that alcohol vendor licensing requirements, as applied to a tribal member on a reservation seeking to sell to persons who are not Native American, do not infringe upon tribal self-government. 463 U.S. at 720, 103 S.Ct. 3291.

[¶ 14] Maybee argues that *Rice* is distinguishable because it involves a federal statute that grants states and tribes the authority to regulate alcohol sales on Indian reservations, *id.* at 715, 726–27, 103 S.Ct. 3291 whereas there is no corresponding federal statute granting states the authority to regulate tobacco sales on reservations. However, the Court states in *Rice:*

> To the extent that [the alcohol vendor] seeks to sell to non-Indians, or to Indians who are not members of the tribe with jurisdiction over the reservation on which the sale occurred, the decisions of this Court have already foreclosed [the vendor's] argument that the licensing requirements infringe upon tribal sovereignty.

*Id.* at 720, 103 S.Ct. 3291.

[¶ 15] Contrary to Maybee's contentions, *Rice* has applicability beyond alcohol vendor license fees because the Court explicitly relies upon prior decisions concerning other types of fees. One of those decisions is *Moe*, which deals with a tobacco vendor license fee. *Rice*, 463 U.S. at 720 n. 7, 103 S.Ct. 3291 (citing *Moe*, 425 U.S. at 475–76, 96 S.Ct. 1634). The Court struck down the fee in *Moe*, but under distinguishable facts, in that the state sought to enforce it against a Òreservation Indian conducting a cigarette business for the Tribe, on reservation land.Ó 425 U.S. at 480–81, 96 S.Ct. 1634. Maybee, in contrast, conducts his transactions with consumers in Maine in furtherance of his private business. The Department therefore has the authority to enforce the tobacco vendor licensing requirement against Maybee. *See Rice*, 463 U.S. at 720, 103 S.Ct. 3291.

The entry is:

Judgment affirmed.